# Freshfields Bruckhaus Deringer US LLP

NEW YORK
601 Lexington Avenue
31st Floor
New York, NY 10022
T + 1 212 277 4000
Direct T + 1 212 230 4630
F + 1 212 277 4001
Direct F + 1 646 465 7430
E michael.lacovara@freshfields.com
W www.freshfields.com

DOC ID US2380808/35
OUR REF
YOUR REF
CLIENT-MATTER NO. 113541-0015

November 30, 2015

***VIA ECF***

Honorable Gregory H. Woods
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 2260
New York, New York 10007

Re:     *Levy v. BASF Metals Limited, et al.*, No. 1:15-cv-7317-GHW (S.D.N.Y.)

Dear Judge Woods:

In accordance with the Court's November 12, 2015 Scheduling Order, the parties submit this joint letter to advise the Court of the status of the above-captioned case.[1]

**(1)     Nature of the Case**

***Plaintiff's Statement:*** I am an attorney myself, a graduate of New York University School of Law, am currently practicing in New York City according to what I believe are very high standards of legal ethics. I consider myself a Fiduciary. I have been involved in representing numerous clients in various legal matters, and now I am representing myself. I have also served on two occasions as an Article 81 Court-appointed Court Evaluator/attorney for AIPs (Allegedly Incapacitated Persons) and as such have assisted in determining Guardianship appointments.

I consider this Litigation an ordeal for me personally. I am now forced to bring this case to gain full not partial compensation for losses in my Commodities Brokerage Account which I maintained from 2006-2008 at the advice of trusted personal friend at the time. I have pursued many legal avenues in an attempt to gain full satisfaction for my claims. Because of the complexity of this matter, I have had to approach this matter on a piecemeal basis. I am hoping this case will be my last time to come into Court to attempt to achieve full satisfaction so I can move forward with my law practice.

---

[1] For purposes of this letter, "Defendants" means BASF Metals Limited; BASF Corporation; Goldman Sachs International; Goldman Sachs Group, Inc.; Goldman, Sachs & Co.; Goldman Sachs Execution & Clearing, LP; ICBC Standard Bank Plc; UBS AG; UBS Securities LLC; HSBC Bank USA, NA; and London Platinum and Palladium Fixing Company Ltd. The London Platinum and Palladium Market Ltd. is named in the Complaint, but does not join this letter.

The Freshfields Bruckhaus Deringer US LLP partners include members of the Bars of the State of New York and the District of Columbia, Solicitors of the Supreme Court of England and Wales and Rechtsanwälte of Germany

**Freshfields Bruckhaus Deringer** us LLP

My claim is to recover monetary losses in connection with my NYMEX Platinum contracts in my commodities brokerage account at the former Future Commission Merchant MF Global, Inc. now going through a Chapter 7 Liquidation proceeding. During this approximate two year period, I was a bona fide member of the investing public and an actual eligible market participant. I was fortunate to have accumulated some savings that I wanted to invest conservatively for my future. I had accumulated these savings the old-fashioned way, by honest, hard work and living a relatively modest lifestyle. Because I was told by a Harvard MBA that commodities futures were very solid investments, and they appeared to be valid based on my research, I decided to become an investor.

As a direct purchaser of NYMEX contracts in my own brokerage account, I contend that I do have Article III standing, including Antitrust standing to bring my claims herein. *See In Re Electronic Books Antitrust Litigation*, 2014 WL 1468122 (S.D.N.Y. 2014); *Three Crown Limited Partnership v. Salomon Bros.*, 1995 WL 422467 *4 (S.D.N.Y. 1995); *Pollack v. Citrus Assoc. Of the New York Cotton Exchange*, 512 F. Supp. 711, (S.D.N.Y. 1981). I personally and individually owned approximately 44 NYMEX Platinum Futures Contracts from approximately February, 2008 through September 2008. I am claiming losses including lost profits in my NYMEX Futures Platinum holdings as well as other non-Platinum losses that were also forced to be liquidated on or about August 15, 2008 and thereafter when there was a sudden and unexpected drop in the price of NYMEX Platinum Market without any fundamental reasons, in my opinion. Such conduct turned out to form the basis of my instant complaint sounding in Price fixing which although defined as a criminal felony, is also the basis for the imposition of civil compensation, the latter of which I am seeking in my case. Because of the shock I experienced seeing a large portion of my life-savings dissipate, I felt robbed. I can state that there was emotional distress involved as well. Because commodities investing requires daily attention as one must mark-to-market her positions, and keep up with a wide variety of market indicators, the shock to me from defendants' alleged wrongful conduct caused me to become unable to even manage my own account without assistance after approximately August 15, 2008.

**Price Fixing**: Because my allegation of Price Fixing among horizontal competitors constitutes a per se violation of the Sherman Act, S. 1, I have a reduced pleading requirement that I have met. Therefore, defendants' contention that my Antitrust pleadings are deficient are contrary to well-established precedent. *See U.S. v. Soconmy Vacuum Oil Co.*, 310 U.S. 150, 60 S. Ct. 811 (1940); *see also*, FLETCHER-CYC 4982.05 Per Se rule (2014 Ed.) My Complaint also fairly alleges Antitrust Injury and such Injury under similar circumstances was held to satisfy required pleading standards in the recent case of *In Re Forex*, 1:13-cv-07789-LGS, Doc. # 242 (S.D.N.Y. 1/18/2015).

My claim is simply that the defendants conspired to set the prices of Spot and NYMEX Platinum and Palladium, while taking positions favorable to their price-fixing activity to profit at the expense of the members of the investing public such as myself. Since these investments are a zero-sum game and for every person who profits another must necessarily lose, the alleged scheme required market participants such as myself to remain in the market. Price Fixing effects the free market

# Freshfields Bruckhaus Deringer US LLP

system because where the prices of a good or service are not the result fair competition because horizontal competitors come together to decide the prices of a good or service such as Platinum and its NYMEX Future Contract; the result to the public is extremely detrimental by requiring the average person to pay more to get less or to put a squeeze on the market as is what allegedly happened in my case.

However, this case is larger than just my personal losses, although they are very important to me, rather the Free Market which is so crucial to our Democracy has been presumptively hurt; and it appears that similar conduct has been alleged in a variety of markets during the same time frame as this case including: the Libor Market, the Forex Market and now the United States Treasury Market. *See Cleveland Bakers And Teamsters Pension Fund, Et. Al. v. Bank of Nova Scotia, Et. Al*, 1:15:-cv-06782, Docket #1 (August 26, 2015. S.D.N.Y.). Each of these markets are billion or trillion dollar markets. Because my claim is for civil compensation, the defendants should view these cases as an opportunity to self-correct in addition to compensating plaintiffs.

My claim continues to describe the details of this price fixing scheme whereby some of these defendants allegedly arrogated to themselves the role of auctioneers. The auction process led the members of the public including myself into believing there was a legitimate spot market in London dictating legitimate prices of NYMEX futures in New York based on the fundamentals of supply and demand. As such, my allegations are that these defendants were able to lure members of the investing public into the Platinum markets because people like me provided the necessary liquidity for these large defendants to eventually exit their positions at enormous profits for themselves. As defense counsel have argued rhetorically in the related Class Action Motion to Dismiss – why would these defendants buy and sell at losses to each other in London? To answer because, members of the investing public were there in New York to provide liquidity in the futures market necessary for these defendants to sustain superficial losses in the London Auctions because they knew that they would eventually pull off their scheme in the NYMEX Market.

In the world of Commodities, unlike Securities, overlapping claims are allowed and even encouraged, because the scheme of the Commodities Futures Industry is based in large part on self-

regulation and private rights of actions rather than government regulation which is much more prevalent in the Securities Industry which limits overlapping private rights of action. *See Liest v. Simplot*, 638 F.2d 283 (2d Cir 1980), aff'd sub nom, *Merrill Lynch v.Curran*, 456 U.S. 353, 102 S. Ct. 1825 (1982); *see also, Strobl v. N.Y. Mercantile Exchanges*, 768 F. 2d 768 (2d Cir. 1985 (Second Circuit upholding dual claims for price fixing sounding in violations of the Sherman act and the Commodities Exchange Act); *see also, The Availability of Antitrust Treble Damages for Commodities Market Manipulation*, 54 Fordham Law Review pp. 853-868 (April 1986). In fact, private companies often serve as DSRO s (Designated Self-Regulatory Organizations) for FCMs (Future Commission Merchants). Some cases have even deemed plaintiffs such as myself as private attorney generals. Therefore, my claims all sounding in price fixing are valid whether defined under the Commodities Exchange Act 7 U.S.C. 9(1) & (3), 13a(2) and 13(b); the Sherman

# Freshfields Bruckhaus Deringer US LLP

Act as a Restraint of trade, 15 U.S.C. 1 as well as the Donnelly Act under N.Y General Business Law 340, Et. Seq.; and/or as the basis for a Civil Rico under 18 U.S.C. 1961, Et. Seq. claim since the alleged conspirators allegedly used means including phone lines, emails, faxes and the mail to communicate with one another and agreed to fix prices as they even admit under the auspices of a price fixing auction that they admittedly conducted twice daily over the telephone lines. Such conduct supports my claim for wire fraud 18 U.S.C. 1343 and mail fraud under 18 U.S.C. 1341. I disagree with Defendants' contention that the twice daily fixing calls over a multi-year period did not qualify as two predicate acts required to impose civil liability under the RICO Act. *See Minepeco v Hunt*, 718 F. Supp. 168 (S.D.N.Y. 1989).

It should be noted that I strenuously disagree with defendants' position that the above-stated price fixing claims (except perhaps under RICO) are subject to the heightened pleading standards under Federal Rule of Civil Procedure 9, but rather are evaluated on a case-by-case basis and are often subject to the regular pleading standards under Fed. R. Civ. Pro. 8. *See In Re Amaranth*, 730 F.3d 170, 181, fn 11 (2d Cir.2013); *CFTC v. Parnon Energy Inc.* 875 F. Supp. 233 (S.D.N.Y. 2012)(WHP) (Applying Rule 8 to CEA manipulation claims). Indeed, in this case, the price fixing schemes should be evaluated under Rule 8, because these price-fixing claims relate to an abuse of market power, rather than fraudulent statements. Indeed, I have never even spoken to any of the defendants in this case concerning Platinum, thereby negating the fraud issues, since no material misstatements were ever tendered to me to induce me to purchase Platinum by these defendants.

My Market Manipulation Claim under the Commodities Exchange Act appear to me to be sound and well-pled and after discovery there should be the documentary evidence to establish the claims by a preponderance of the evidence. The instant complaint alleges the required elements under well-settled law including, intent, conduct, and causation of price-artificiality. *In Re Amaranth*, 587 F. Supp. 2d 513 (S.D.N.Y. 2008), aff'd, 703 F.3d 170 (2d Cir. 2013.)

The most important factual issues necessary to resolving this price fixing case are discovering the names, conduct and intentions of the employees of these defendants and then determining why or whether there was a lack of supervision on behalf of these defendants to eradicate this conduct that allegedly spanned over a 7 year period. To that end discovery will be crucial such as: (1) emails and tape-recorded conversations and transcribed conversations between and among defendants demonstrating their agreement to fix prices and their actual fixing of prices, (2) Account Statements both in the NYMEX futures Markets and in the Spot Market both for each individual defendant and their affiliates as well as their proprietary customers to demonstrate what positions they took and when and how they continued to gain profits and avoid risk from which can be inferred advance notice of the positions, and thus a conspiracy, (3) Tape-recorded conversations from the NYMEX Exchange to hear what the brokers are talking about on the Floor, (3) Statistical models demonstrating artificial price fixing.

There are other equally important claims sounding in Monopolization in violation of the Sherman Act 2, 15 U.S.C. 2; violations of the Anti-Fraud provisions of the Commodities Exchange Act, 7

# ☙ Freshfields Bruckhaus Deringer US LLP

U.S.C. 6, Et. Seq., and other predicate Acts under the RICO statutes involving money laundering 18 U.S.C. 1956 and transactions in stolen money 18 U.S.C. 1957. With respect to the latter claims, when profits are made through unlawful price fixing schemes any use of those proceeds may be deemed transactions in stolen money and/or money laundering as defined by those statutes. The Monopolization claim is also very important because it demonstrates how these large banks could move markets by exerting their monetary power to purchase and sell such large positions uneconomically so that the free market could not recover or counteract the acts of the alleged Monopolizers. Discovery on this claim will include their cash available to buy and sell Platinum and Palladium and their profit statements. *See In re Crude Oil Futures Litigation*, 913 F. Supp.2d 41, 51 (S.D.N.Y. 2012.)

Last by certainly not least are the Pendant State law claims that are very important for pro se litigants, like myself, who should be allowed to proceed in State Court without the expense of an expert. There are good faith bases for these Pendant claims to be heard, and they will be fully briefed at the appropriate time. In fact, there appear to be many people similarly-situated to myself who are so upset, but lack the resources and educational background to even have their day in a Federal Court, but could appear in State Court.

Each claim is valid upon information and belief, and some claims do present issues of first impression. I will state the basis of each claim seriatim: (1) Claims sounding in violations of the Martin Act-- at least one federal court has recognized a Private Right of Action, *see Bishop v. Commodity Exchange,* 564 F. Supp. 1557, 1564-65 (S.D.N.Y. 1983). The case of *Assured Guar (UK), LTD v. J.P. Morgan Inv. Mgt. Inc.*, 18 N.Y.3d 341, 939 N.Y..2d 274 (2011) only deals with whether the Martin Act preempts common law claims and leaves a private right of action open with respect to commodities future contracts which as discussed before are based primarily on private rights of action; (2) Deceptive Practices Act under N.Y. General Obligations Law Sec. 349- A good faith argument will be made that these transactions were deceptive and this issue also presents an issue of first impression; (3) Intentional Infliction of Emotional Distress- this claim appears valid since I was the victim of conduct defined as a felony which should shock one's conscience as well as the fact that there were physical manifestations that will be proved at trial; (4) Unjust Enrichment- allegations do show a close relationship between defendants' profits and Plaintiff's losses to satisfy this element of the claim. (5) Tortious interference with contractual relations, because I owned NYMEX contracts personally and not through a mutual fund or ETF, these contracts were wrongfully interfered with by the defendants' conduct, and another issue of first impression will be presented for this Honorable Court's resolution.

With respect to the Fraud based claims including Civil RICO and Equitable Tolling Statute of limitations, based on fraudulent concealment, it is my understanding that at the pleading stage a plaintiff is given some leeway to move forward to discovery on these claims where inference can be drawn against defendants who have hidden the facts from the plaintiffs. But, those issues will be fully briefed as well.

# ℞ Freshfields Bruckhaus Deringer US LLP

***Defendants' Statement:***   This Action concerns factual allegations similar to those raised in *In re Platinum & Palladium Antitrust Litigation*, 1:14-cv-09391-GHW ("*In re Platinum*"), a putative class action also pending before Your Honor.   Plaintiff's Complaint includes all of the Defendants in *In re Platinum*, and asserts a number of the same causes of action, including claims for violations of the Sherman and Commodity Exchange Acts.   Defendants are completing briefing of their motions to dismiss the Second Amended Complaint in *In re Platinum* and are due to file reply briefs in further support of their motions on December 11, 2015.   By order of this Court, all discovery has been stayed pending the Court's resolution of Defendants' motions to dismiss.

Defendants anticipate that they will move to dismiss the Complaint's Sherman and Donnelly Act claims on at least the following grounds: (i) the Complaint fails to allege facts sufficient "to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); (ii) Plaintiff lacks standing to pursue her antitrust claims, *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983); (iii) Plaintiff has failed to allege facts sufficient to support a claim that she suffered antitrust injury, *Brunswick Corp. v. Pueblo Bowl-0-Mat, Inc.*, 429 U.S. 477 (1977); (iv) Plaintiff has failed to allege any injury to competition, *E&L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 28 (2d Cir. 2006); (v) Plaintiff's Sherman Act claims are barred under the Foreign Trade Antitrust Improvements Act of 1982; and (vi) certain of the alleged conduct falls outside the Clayton Act's statute of limitations.

With respect to the Commodity Exchange Act ("CEA") claims, Defendants anticipate that they will move to dismiss on at least the following grounds: (i) Plaintiff has failed to plead the essential elements of fraud-based manipulation under the CEA, in particular those elements subject to the heightened pleading standard of Fed. R. Civ. P. 9(b); (ii) Plaintiff has failed to plead the essential elements of artificial price manipulation under the CEA, 7 U.S.C. §§ 9, 25, *see In re Amaranth Natural Gas Commodities Litig.*, 730 F.3d 170, 173 (2d Cir. 2013); (iii) Plaintiff has failed to plead the essential elements of principal-agent liability under the CEA, 7 U.S.C. § 2(a)(1)(B), *see Guttman v. CFTC*, 197 F.3d 33, 39 (2d Cir. 1999); (iv) Plaintiff has failed to plead the essential elements of aiding and abetting under the CEA, 7 U.S.C. § 25, *In re Natural Gas Commodity Litig.*, 337 F. Supp. 2d 498, 511 (S.D.N.Y. 2004); (v) the CEA does not apply to extraterritorial transactions under *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010), and *Loginovskaya v. Batratchenko*, 764 F.3d 266 (2d Cir. 2014); and (vi) the alleged conduct falls outside the CEA's two-year statute of limitations.

With respect to the Racketeer Influenced and Corrupt Organizations ("RICO") Act claims, Defendants anticipate that they will move to dismiss on at least the following grounds: (i) the Complaint fails to allege facts sufficient "to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570; *Beck v. Prupis*, 529 U.S. 494, 495 (2000); (ii) Plaintiff has failed to allege facts to support the claim that each Defendant committed two or more predicate acts of racketeering enumerated in 18 U.S.C. § 1961(1); (iii) Plaintiff has failed to allege facts sufficient to support a claim that she suffered injury as a proximate result of Defendants' alleged violations of

# Freshfields Bruckhaus Deringer US LLP

18 USC § 1962, *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 2 (2010); (iv) certain of the alleged conduct falls outside the statute of limitations, *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 183 (1997); and (v) certain of Plaintiff's RICO claims are impermissibly extraterritorial, *Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419 (GBD), 2015 WL 1515487, at *7-8 (S.D.N.Y. Mar. 31, 2015) (dismissing RICO claims based on alleged manipulation of pricing benchmark in London).

With respect to the common-law unjust enrichment claims, Defendants anticipate that they will move to dismiss on the grounds that Plaintiff has failed to plead facts showing that each Defendant has been enriched at Plaintiff's expense and that Plaintiff and Defendants had the relationship required to give rise to a claim for unjust enrichment. *Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419 (GBD), 2014 WL 1280464, at *13 (S.D.N.Y. Mar. 28, 2014).

With respect to the claim for tortious interference with contractual relations, Defendants anticipate that they will move to dismiss on the grounds that Plaintiff has failed to plead facts showing that she had a contractual relationship with the New York Mercantile Exchange necessary to give rise to a claim for tortious interference with contractual relations or that Defendants intentionally procured a breach of any such contractual relationship. *Gundlach v. IBM Inc.*, 594 F. App'x 8, 9-10 (2d Cir. 2014); *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006).

With respect to the claim for violations of the Martin Act, N.Y. Gen. Bus. Law § 352 *et seq.*, Defendants anticipate that they will move to dismiss on at least the basis that there is no private right of action under the Martin Act for violations of the statute. *Picard v. Estate of Madoff*, 464 B.R. 578, 583 (S.D.N.Y. 2011); *Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.*, 18 N.Y.3d 341 (2011).

With respect to the claim for violations of the Deceptive Practices Act, N.Y. Gen. Bus. Law § 349 *et seq.*, Defendants anticipate that they will move to dismiss on the grounds that Plaintiff has failed to plead facts showing that Defendants engaged in conduct that was "consumer-oriented" and "misleading in a material respect," or that Plaintiff suffered injury as a result of Defendant's alleged misconduct. *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009); *Josephson v. United Healthcare Corp.*, No. 11-CV-3665, 2012 U.S. Dist. LEXIS 144830, at *20 (E.D.N.Y. Sept. 28, 2012).

With respect to the claim for intentional infliction of emotional distress, Defendants anticipate that they will move to dismiss on the grounds that Plaintiff has failed to plead facts showing that Defendants engaged in extreme and outrageous conduct with the intent to cause Plaintiff severe emotional distress or that Defendants' alleged conduct caused severe emotional distress to Plaintiff. *See Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996); *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993).

One or more Defendants anticipate that they will move to dismiss on personal-jurisdiction grounds.

# ⟨W⟩ **Freshfields Bruckhaus Deringer US LLP**

Finally, it has come to Defendants' attention that Plaintiff previously initiated an action against Joseph Welsh, Moore Macro Fund LP, and other defendants alleging damages arising from manipulation of the platinum market. *Levy v. Welsh*, 13 Civ. 1858 (WHP) (S.D.N.Y.) (the "*Welsh*" action). The Complaint in that earlier action, which asserted many of the same causes of action asserted here, alleged that the defendants artificially inflated platinum prices through "bang the close" transactions, causing Plaintiff to lose "her entire Platinum investment of $280,000." *Levy v. Welsh*, 13 Civ. 1858 (WHP) (S.D.N.Y. 2010), July 1, 2013 Compl. ¶¶ 3, 199-216, 382, ECF No. 1. Based on a review of the public docket and on discussions with Plaintiff, it is Defendants' understanding that a settlement was reached in that case. Given that the Complaint in the prior action alleged damage arising from manipulation of the platinum market, Defendants have expressed concern to Plaintiff about the possibility of a duplicative recovery in this case or that her claims might be barred by the prior settlement.

**(2)      Statements Concerning Subject Matter Jurisdiction and Venue.**

*Plaintiff's Statement*: The basis for Subject Matter Jurisdiction is the presentation of Federal questions under 28 U.S.C. 1331, Et. Seq. and 28 U.S.C. 1367 and pursuant to 7 U.S.C. 1, Et. Seq., 15 U.S.C. 1, Et. Seq, and 18 U.S.C. 1961, Et. Seq.  as well as Pendant State Law (supplemental jurisdiction) pursuant to 28 U.S.C. 1367(a) and Fed. R. Civ. Pro. 18(a).

The basis for Venue is 28 U.S.C. 1391(b)(2) and or (b)(3), in that a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of the property that is the subject of the action is situated in New York, namely NYMEX future trading accounts that were influenced by this price fixing scheme as well as traders acting on behalf of the defendants in New York County where the NYMEX is located and where conversations and trading huddles occurred to profit from this Scheme.  As of now, we do not know where the auctioneers were located when they engaged in their twice daily fixing calls and presumably parties called into the fixing calls from their New York offices on some occasions over this 7 year period. Alternatively, venue is proper because New York is a county where the foreign corporation as well as the American corporations are doing business and are subject to personal jurisdiction, upon information and belief.

*Defendants' Statement*: As noted in Section 1 above, a closely related putative class action, *In re Platinum*, is currently pending before this Court.  Several Defendants have moved to dismiss that action on personal-jurisdiction grounds, and they reserve all rights to do so here.

**(3)      Relevant Motions**

  (i)      *Anticipated Motions:*

*Plaintiff's Statement:* Plaintiff intends to bring a motion pursuant to Federal Rule of Civil Procedure 4(d) for all costs associated with service of process, because defense counsel have refused to accept the Waiver of Service sent to them in accordance with Fed. Rule of Civil

# Freshfields Bruckhaus Deringer US LLP

Procedure 4(d). There was absolutely no good cause to fail to send back a waiver form as required by the Rule. The defense teams attempt to have me sign some kind of stipulation which I was prepared to do in principal and which needed some negotiation, was retracted and no waivers were signed. Notably Rule 4(d) does not require me to sign any stipulation, but I was willing to do so in principal, anyway. Defense counsels refusal to contact me regarding my suggested changes to the Stipulation is unacceptable conduct especially in light of the attenuated time frame I have in which to serve process, and it appears to be calculated to waste my time which they did, as well as their refusal to return the waivers which were required to be filed on the ECF docket sheet.

Plaintiff also reserves her right to file a motion for alternative service of process if necessary pursuant to Fed. Rule of Civ. Procedure 4(f)(3) and 4(h)(1)(B)(2).

Plaintiff may also have to move to have subpoenas issued to the NYMEX to see defendants trading activity on record with the NYMEX through their clearing house members.

Plaintiff also intends to move if necessary for jurisdictional discovery regarding the foreign defendants, because for example, it has come to her attention that ICBC Standard Bank maintains an office and does business at 520 Madison Avenue in New York. Ms. Levy believes costs can be saved in the long run by conducting jurisdictional discovery early on.

**Defendants' Statement:** Defendants intend to move to dismiss the Complaint as described above.

   ***Pending Motions:*** None.

   ***Other anticipated applications:*** Plaintiff has indicated that she will not consent to a stay of discovery pending the Court's resolution of Defendants' anticipated motions to dismiss and intends to seek pre-motion discovery of, among other things, chatroom conversations, emails, and trading records relating to Defendants' platinum and palladium trading activities. On this basis, with the Court's permission, Defendants intend to move to stay all discovery until the Court resolves their contemplated motions to dismiss. That motion would largely replicate the arguments and positions advanced in Defendants' motion to stay discovery in *In re Platinum*, which the Court granted by order dated April 21, 2015.

**(4)   Discovery**

   (i)   ***Discovery Taken To Date:*** None.

***Plaintiff's Statement on Expected Discovery:*** All documentary evidence described herein should be admissible as business records kept in the regular course of business. Such evidence includes emails, chat room conversations, correspondences and tape recorded conversations or transcripts thereof, the trading records of all defendants and their affiliates are crucial to determine their proprietary trading positions and to determine motive and intent and conduct. Depositions are also

**Freshfields Bruckhaus Deringer US LLP**

essential. Also the positions of defendants' customers and statements made to customers appear to be essential to see if these defendants were using their confidential customer information to move the markets as well.

With respect to Defendants motion to stay discovery, plaintiff disagrees with defense counsels description of certain other cases such as *LIBOR* as valid precedential authority to stay this case. LIBOR directly contradicts another similar case *In Re FOREX*, 13-cv-07789 (Doc. #242, SDNY 01/28/2015) where Judge Schofield disagreed with Judge Buchwald in dismissing the antitrust claim in *LIBOR* by stating: "[t]his Court respectfully disagrees with its conclusion." . . .. *See* 13-cv-07789 at *23. Presently, upon information and belief, the *LIBOR* case is on appeal. However, *LIBOR* demonstrates the difficulty a Court will have in deciding a motion to dismiss absent some limited discovery. Despite the fact that the *LIBOR* scandal culminated in an approximate $5.6 billion dollar fine against 6 large banks, some of which are defendants herein and members of the London Platinum and Palladium Market as well; nevertheless plaintiffs who sought compensation for losses due to their Libor-based financial instruments were dismissed. Therefore, such limited discovery is important to the Court in assisting it in deciding a Motion to Dismiss. As such, Judge Pauley who handled a very similar case, allowed for 250,000 pages of discovery already produced to the CFTC to be re-produced during Motion practice. *See In Re Platinum and Palladium Commodities Litigation*, 10-cv-3617 Docket #59 (WHP) (SDNY 11/30/2010.) Therefore, I also intend to seek limited discovery at this time and will oppose the requested Stay.

***Defendants' Statement on Expected Discovery***: Defendants request that discovery be stayed pending the Court's resolution of Defendants' anticipated motions to dismiss the Complaint in its entirety. Defendants believe that a stay is necessary to avoid disruption to the related class case, in which the Court has stayed all discovery and the parties are in the final stages of briefing motions to dismiss. The discovery that Plaintiff seeks is significantly broader and far more burdensome than the discovery initially requested by plaintiffs in *In re Platinum*,[2] which the Court found to be "broad" and liable to "pose an undue burden on defendants." ECF No. 48 at 2. The Court's decision to issue a stay in *In re Platinum* was both correct and consistent with the position taken by most courts with similar cases in this District.[3] The breadth of Plaintiff's anticipated requests makes the need for a stay even more appropriate here.

---

[2] Plaintiffs in *In Re Platinum* requested "(1) documents being assembled and produced (and documents already assembled and produced) to U.S. government regulators related to trading of platinum and palladium; and (2) defendants' transaction data concerning their trades of platinum, palladium, and their respective financial derivatives." ECF No. 35 at 1.

[3] *See In re Commodity Exchange, Inc., Gold Futures & Options Trading Litig.*, No. 14 MD 2548 (VEC) (S.D.N.Y.) Oct. 2, 2014 Order at 1-2, ECF No. 12; Oct. 20, 2014 Order at 2, ECF No. 22; *In re London Silver Fixing, Ltd., Antitrust Litig.*, No. 14 MD 2573 (VEC) (S.D.N.Y.) Oct. 14, 2014 Order at 7, ECF No. 4; Dec. 3, 2014 Order at 1-2, ECF No. 24; *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262 (NRB) (S.D.N.Y.), Mar. 1, 2012 Hr'g Tr. at 4-5, ECF No. 282; Oct. 18, 2013 Order at 2, ECF No. 489; *7 W. 57th St. Realty Co. v. Citigroup, Inc.*, No. 13 Civ. 0981 (PGG) (S.D.N.Y.), July 8, 2013 Order at 1, ECF No. 107; *Laydon v. Mizuho Bank, Ltd.*, No. 12 Civ. 3419 (GBD) (S.D.N.Y.), Aug. 18, 2014 Order, ECF No. 362; *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 Civ.

 **Freshfields Bruckhaus Deringer US LLP**

Entering a stay of discovery until the motions to dismiss are decided will maximize the efficiency of these proceedings and avoid disruption of the related class case.  As the Supreme Court has recognized, the "basic deficiency [of a complaint] should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal quotation marks omitted).  Requiring Defendants to produce documents before a ruling on the legal sufficiency of the Complaint would result in substantial prejudice to Defendants.  Defendants respectfully submit that the parties and the Court should first address motions that may end the litigation or narrow the case.

**(5)     Damages**

***Plaintiff's Statement***: (1) Actual Damages for Platinum Losses: $280,000.00; (2) Actual Damages for Non-Platinum Losses due to the Collapse of her Platinum Positions: $84,000.00; (3) Loss of Profits on Platinum Investments: $413,850.00; (4) Total Out of Pocket and Future Profits: $777,850.00; (5) Treble damages due to RICO and Sherman Act Claims: $2,333,550.00; (6) Damages for Pendant State Claims (including Emotional distress & punitive damages) $6,500,000.00; (7) Unjust Enrichment and disgorgement:  To be determined; (8) Costs and Disbursements: To be determined.

As demonstrated on the public docket sheet, there was a prior settlement against different defendants not present in this case and therefore no claim preclusion would even apply absent identify of parties.  Defendants' position that I am precluded based on a partial settlement does not appear to have any basis nor has any authority been cited for this disputed position.  However, the prior partial settlement is confidential due to a confidentiality agreement that was signed.  I intend to seek outside counsel or do the legal research myself regarding whether I can satisfy defendants' requests without breaching my confidentiality agreement which may cause me personal liability.  I would request that defendants' too sign a confidentiality that indemnifies me for any breaches due to their disclosure of the terms, if such were to occur.  However, I do not accept the contention that my failure to breach a confidentiality is the reason for defendants' refusal to compromise my otherwise meritorious claim.

My instant complaint seeks a full recovery form the named defendants in this complaint because I believed that these instant defendants in *Levy v. BASF* should be held joint and severally liable for the allegations in this  Complaint if proven.  Whatever I pled in my first complaint was based entirely on a good faith evaluation of the evidence, I had at the time.  Based on new evidence that has come to my attention through public records and on a piecemeal basis over several years, I have changed my mind regarding my claims and reserve my right to do in the future  as I discover new

7789 (LGS) (S.D.N.Y.), March 3, 2014 Hr'g Tr. at 23, ECF No. 152; *In re Credit Default Swaps Antitrust Litig.*, No. 13 MD 2476 (DLC) (S.D.N.Y.), Dec. 5, 2014 Hr'g Tr. at 52-53, ECF No. 244; Mar. 26, 2014 Order at 2, ECF No. 284; *In re N. Sea Brent Crude Oil Futures Litig.*, No. 13 MD 2475 (ALC) (S.D.N.Y.), Apr. 22, 2014 Order at 4, ECF No. 123.

# Freshfields Bruckhaus Deringer US LLP

information.  In fact, based on a review of the public record, there came a time when I began to believe that there multiple parties manipulating the United States Platinum Market.  Thus, due to these new facts, I decided in good faith to release the other defendants and accept a partial settlement.  However, just because I claimed similar damages in a previous lawsuit, does not mean I received full compensation nor full satisfaction of my claims.

**Defendants' Statement**:  Defendants believe that none of Plaintiff's claims is well-pleaded, that her claims potentially are barred by a settlement and release in a separate action in which she raised claims for the same injuries with respect to the same trading alleged here, and that she has suffered no cognizable damages in any event.

**(6)    Settlement Discussions.**

**Defendants' Statement:**  Plaintiff has indicated that she would like to pursue settlement discussions with one or more Defendants, and has stated that she intends to seek a referral to mediation for this purpose.  Defendants believe it is premature to discuss settlement, especially before they have received information regarding Plaintiff's settlement of her *Welsh* action, either from her or, with her assent and subject to any relevant confidentiality obligations, from the defendants in that earlier, related action.

**(7)    Other relevant information.**

**Plaintiff's Statement:**  Ms. Levy affirmatively states although this letter is being submitted jointly she has not confirmed or adopted any statements made by defendants regarding their interpretation of her confidentiality agreement and affirmatively disclaims any of their statements by defendants regarding her confidentiality agreement.

Respectfully submitted,

By:   /s/ Susan J. Levy

Susan J. Levy, Esq.
Attorney Bar Code SL2485
40 East 10th Street, Suite 2K
New York, New York 10003
212-962-1782 (tel)
212-962-3711 (fax)
Susanjlevy@aol.com

By:   /s/ Michael Lacovara

Michael Lacovara
Leah Friedman
FRESHFIELDS BRUCKHAUS DERINGER
US LLP
601 Lexington Avenue
New York, New York 10022
Tel: (212) 277-4000
Fax: (212) 277-4001

*Attorneys for HSBC Bank USA, N.A.*