UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------

SUSAN LEVY,

               Plaintiff,

   -against-

BASF METALS LIMITED, *et al.,*

             Defendants.

-------------------------------------------------------

Civ. No. 15-cv-7317 (GHW)

**ORAL ARGUMENT REQUESTED**


**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS UBS AG and UBS SECURITIES, LLC.'s MOTIONS TO DISMISS PURSUANT TO FED. R. CIV.  P. 12(b)(2) and 12(b)(6).**

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS...................................................................................................................1

STATEMENT OF FACTS..............................................................................................................1

ARGUMENT.....................................................................................................................................4

I. BECAUSE FOREIGN DEFENDANT UBS AG PURPOSEFULLY
AVAILED ITSELF TO THE UNITED STATES AND NEW YORK BY
HOLDING POSITIONS IN NYMEX PLATINUM AND PALLADIUM
DURING THE RELEVANT TIME PERIOD, IT IS SUBJECT TO
SPECIFIC PERSONAL JURISDICTION IN NEW YORK.........................................................4

    A. Because UBS AG Transacted Business in New York by
    Continuously Trading Platinum and Palladium NYMEX
    Contracts over the NYMEX Exchange During the Relevant
    Time Period, Through its Agent UBS Securities, LLC., thus
    UBS AG Has Purposefully Availed Itself to New York and
    Satisfies Constitutional Due Process........................................................................................5

    B. Because UBS AG's conduct was related to Ms. Levy's Claim
    For Losses, the second prong of the Purposeful availment test
    satisfies Due Process...................................................................................................................7

    C. Because UBS AG's conduct in London effected the NYMEX
    Markets, it is also subject to jurisdiction under the effects test................................................9

    D. Because The Exercise of Jurisdiction is Reasonable, the Con-
    stitutional Minium Contacts Test is Satisfied.........................................................................13

II. BECAUSE THIS CASE PRESENTS THE EXCEPTIONAL CASE
UNDER *DAIMLER V. BAUMAN,* WHERE DEFENDANT UBS AG
HAS MADE ITSELF QUITE AT HOME IN THE UNITED STATES,
GENERAL JURISDICTION SHOULD BE EXERCISED.......................................................13

CONCLUSION...............................................................................................................................15

## TABLE OF AUTHORITIES

Cases                                                                                                          Page

7 W. 57th Street Realty v. Citigroup, Inc.
    2015 WL 1514539(S.D.N.Y.2015.............................................................................................12

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
    171 F.3d 779 (2d cir. 1999)...................................................................................................4,13

Bell Atlantic Corp. v. Twombly
    550 U.S. 544 (2007).................................................................................................................4

Best Van Lines, Inc. v. Walker,
    490 F.3d 239 (2d Cir., 2007).....................................................................................................8

Calder v. Jones,
    465 U.S.783, 104 S.Ct. 1482 (1984).....................................................................................9-10

Daimler v. Bauman,
    134 S.Ct.746, 187 L.Ed.2d ...............................................................................................4,5,13,14

Eskofot A/S v. E.I. Du Pont Nemours & Co.,
    872 F.Supp. 81 (S.D.N.Y.)......................................................................................................10

Gucci America Inc. v. Weixing Li, DBA, Et.Al.,
    768 F.3d 122 (2d Cir. 2014).............................................................................................6,7,11,13

Henderson v. INS,
    157 F.3d 106, (2d Cir. 1998).....................................................................................................8

International Shoe v. Washington
    326 U.S. 310, 66 S.Ct.154, 90 L.Ed. 95(1945)........................................................................15

Laydon v. Mizuho Bank, Ltd,
    No. 12 Civ. 3419(GBD), 2015 WL 151358 (S.D.N.Y. March 31, 2015)...................................12

Leaseco Data Processing Equipment Corp. v. Maxwell,
    468 F.2d 1326 (2d Cir. 1972)..................................................................................................6,9

In re LIBOR Financial Instruments Lit. (LIBOR 1V),
    No. 11 MD 2262 (NRB), 2015 WL 4634541*`15 (S.D.N.Y. Aug. 4, 2015)...........11,12,13

Licci Ex Rel. Licci v. Lebanese Canadian Bank (Licci III)
    732 F.3d 161 (2d Cir. 2013)...........................................................................................6,7,8,11

Licci v. Lebanese Canadian Bank et al, 20 N.Y.3d 327, 960 N.Y.S.2d 695 (2012).........................8

Morrison v. Australian National Bank, Ltd
    561 U.S. 247 (2010)..................................................................................................................10

Perkins v. Benguet Consolidated Mining Co.
    342 U.S. 437, 72 S.Ct. 413 (1952)...........................................................................................14

Schoenbaum v. Firstbrook
    268 F.Supp. 385 (S.D.N.Y.1967)..............................................................................................10

SPV Osus Ltd. v. UBS AG, Et. Al.,
    114 F. Supp. 3d 161 (S.D.N.Y.2015).........................................................................................12

Strauss v. Credit Lyonnais, S.A.
    2016 WL 1305160 (E.D.N.Y.2016)........................................................................................8,13

In re Terrorist Attacks
    349 F.Supp. 2d 765 (S.D.N.Y.2005)...........................................................................................6

**Statutes**

15 U.S.C.§ 78aa(b)(2).....................................................................................................................10

Fed. R. Civ. P. 4(k)..........................................................................................................................14

Fed. R. Civ. P. 12(b)(2)..................................................................................................................1,15

Fed. R. Civ. P. 12(b)(6)..................................................................................................................1,15

N.Y.C.P.L.R.§302(a)(1)......................................................................................................................6

Plaintiff, pro se, Susan Levy, respectfully submits this Memorandum of Law in Opposition to UBS, AG's Motion to Dismiss based on lack of personal jurisdiction pursuant to Fed.R. Civ. Pro. 12(b)(2) pursuant to UBS AG and UBS Securities LLC Motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

## STATEMENT OF FACTS

UBS, AG stands in a unique position, and it does not have the same ability to posture and deny allegations, as do the other defendants. Under normal circumstances, even the most liable defendants can be fully exonerated by simply doing nothing in relationship to a court case, because it is the plaintiff who must bear the burden of proof. If the plaintiff fails to move the case forward, the case is over and the defendants are exonerated. However, unfortunately for UBS, AG, they cannot take advantage of this procedural advantage and remain silent now as the other defendants may because of their previous Plea Agreement dated May 20, 2015, which imposes upon them an affirmative duty to cooperate truthfully. *See* Plea Agreement annexed to the Declaration of Susan Levy, dated September 19, 2016 as Exhibit 2. Thus, they cannot deny facts that they know are true according to their Plea deal. For example, if they know there are damning emails with respect to the manipulative conduct in Platinum and Palladium, and if they have even produced these emails to government investigators, then they have actual knowledge about what really happened with respect to the price fixing of Platinum and Palladium; and, they cannot now deny the facts within their knowledge and control in this civil litigation under the plain terms of their Plea Agreement of May 20, 2015. This Plea deal mandates UBS AG to come forward not just with respect to LIBOR, and FOREX but also to disclose any important information it has regarding the alleged manipulation of precious metals of which Platinum is

-1-

one and which is implied throughout the Plea Agreement.

In entering a Plea Agreement on May 20, 2015, UBS AG admitted to one Felony Count in connection with the LIBOR scandal. This Plea Agreement entered into with the Department of Justice is annexed to the Declaration of Susan Levy, Esq. dated September 16, 2016 as Exhibit 2. Because Ms. Levy's case was filed in September, 2015 while the probation period described in the Plea Agreement was presumably in full force and effect and upon information and belief, the probationary period may still be in full force and effect, UBS cannot go along with the other defendants in this case who can keep denying allegations upon knowledge and information.

Although this Plea Agreement was for one felony count, it appears to cover violations of law in connection with the LIBOR scandal, the FOREX Scandal and the Precious Metals Investigation, and V-10 currency indicies This Plea was entered after a previous Non-Prosecution Agreement of 2012 was torn up by DOJ, because the 2012 Non-prosecution agreement prohibited any further violations of law. When UBS's role in the FOREX scandal came out, in 2012, the Non-Prosecution Agreement became a nullity, and a Plea Agreement was executed in 2015. *See* Exhibit 1 to the Plea Agreement describing the prior Non-Prosecution agreement annexed to the Levy Declaration as Exhibit 3. If UBS AG now violates its Plea Deal which let them avoid jail time by paying $203 million dollars as a fine, now, what would be next for them? They apparently are willing to take that risk based on their present posture in this civil case.

Section 7 of the Plea Agreement mandates that UBS, AG will cooperate with law enforcement with respect to any investigations regarding precious metals which includes

-2-

Platinum, at issue herein. Section 7 states that during its probation period:

> "UBS shall continue to cooperate fully with the Criminal Division and other law
> enforcement and regulatory authorities and agencies, subject to applicable law and
> regulations, in any investigation of UBS, its affiliates or subsidiaries, or any of its
> present or former officers, directors employees, agents and consultants, or any
> other party, in any and all matters relating to (a)the manipulation of any
> benchmark interest rates; (b) manipulation or, or fraud in the foreign exchange
> spot and **precious metals markets [Emphasis Added]**, or in connection with
> UBS's V10 Currencies Indices; and © violations of the United States law
> concerning fraud or governing securities or commodities markets, about which
> UBS has any knowledge and about which the Criminal Division shall inquire.

UBS AG also promises in its Plea Agreement in Section 19c that it is "taking

important steps to promote changes to the culture and values across its business." Upon

information and belief asserting lack of knowledge in this case *Levy v. BASF* violates the Plea

Agreement since there does not appear to be any change in UBS AG's continued group think

mentality as demonstrated by its submission of a joint memorandum of law to dismiss this case.

UBS AG would have been well-advised to submit its own brief in this matter, because by signing

off on the other's arguments, it has either violated it's Plea Agreement or is coming very close to

such a breach, upon information and belief.

> Indeed, in Section 25 of the UBS AG Plea Agreement it states:

> "UBS agrees that if it or any of its affiliates or subsidiaries fails to provide
> full, truthful and continuing cooperation as defined in Paragraph 7 of this
> Agreement or otherwise violates any provision of this Agreement, the
> Criminal Division may, in its sole discretion, declare such conduct to
> constitute a breach of this Agreement."

Thus, because this civil litigation herein *Levy v Basf*, has claims for civil

compensation of Criminal Statutes, this case should be considered part of a law

enforcement proceeding, since private attorneys have been called private attorney generals

when prosecuting claims sounding under the Sherman Act and Civil RICO.  As such, the

Plea Agreement should apply to this case.

Furthermore, because the Plea Agreement specifically excludes further

punishment for "precious metals" violations, it can be inferred that there were violations of

law to satisfy the Plausibility requirement of *Twombly* to move this case toward discovery.

I    **BECAUSE FOREIGN DEFENDANT UBS AG PURPOSEFULLY AVAILED
     ITSELF TO THE UNITED STATES AND NEW YORK BY HOLDING
     POSITIONS IN NYMEX PLATINUM AND PALLADIUM DURING THE
     RELEVANT TIME PERIOD, IT IS SUBJECT TO SPECIFIC PERSONAL
     JURISDICTION IN NEW YORK.**

Just like the other defendants, UBS AG has raised a Constitutional Due

Process objection to the power of this Court to exercise specific personal jurisdiction over

UBS AG.  Such an argument is unavailing for UBS AG, since it has already been subjected

to personal jurisdiction over the same types of claims in a Federal Court for conduct

referred to its Plea Agreement annexed to the Declaration of Susan Levy, as Exhibit 2.

Thus, literarily UBS AG could be right down the hall in this Court house regarding its Plea

Agreement, while at the same time asserting lack of specific jurisdiction in this Courtroom.

Thus, its present argument against specific jurisdiction in light of it Plea agreement appears

to be a breach of that very agreement, since refusing to submit to proper jurisdiction is not

the type of cooperation called for under the Plea Agreement.

However, because the applicable law clearly allows this Court to assert

specific jurisdiction over UBS AG based on the traditional purposeful availment test as

well as the Effects Test, specific jurisdiction is proper.  Furthermore, because UBS AG

presents the "exceptional" case described in *Daimler v. Baumann,* 134 S. Ct. 746, 187 L

-4-

.Ed.2d 624  (2014) where UBS earns 35% of its annual income from United States

operations in the approximate sum of $10.7 Billion Swiss Francs,  general jurisdiction

should apply even under *Daimler v Baumann.*  This exceptional case should help walk-back

the holding in *Daimler v. Baumann* where a corporation that derived approximately 2.4%

of its annual worldwide income was not at home in the United States.  That holding did

narrow the scope of general jurisdiction with respect to Foreign Corporations.  However,

because UBS, AG like the other Foreign defendant banks has a substantial, continuous, and

systematic presence in the United States through branches and/or subsidiaries (including

UBS Securities LLC), and because the banking industry is highly regulated; a plaintiff with

a gripe no matter where it occurred should be able to exercise all-purpose jurisdiction over

any banking institution that derives billions of dollars in income the United States.

> **A.    Because UBS AG Transacted Business in New York by Continuously
> Trading Platinum and Palladium  NYMEX Contracts over the NYMEX
> Exchange During the Relevant Time Period, Through its Agent UBS
> Securities, LLC., thus UBS AG Has Purposefully Availed Itself to New
> York and Satisfies Constitutional Due Process.**

Because UBS, AG has a major presence in New York and the United States and

derives substantial revenue from its operations in New York and the United States,

including $10.7 Billion Swiss Francs in 2015, thus, specific jurisdiction is proper under the

traditional purposeful availment test.

In New York and the United States, specific jurisdiction may be exercised

over a foreign defendant where the foreign defendant transacts business in the United States

and/or New York and where such transaction of business is related to the plaintiff's cause

of action. *Gucci America Inc. v. Weixing Li, DBA, Et. Al.*, 768 F.3d 122, 136 (2d Cir.

2014); *Licci v. Lebanese Canadian* Bank, 732 F. 3d 161 (2d Cir. 2013)( *LICCI III rev'd on*

*other grounds, 15-1580* (2d Cir. August 24, 2016).; *Leasco Data Processing Equipment*

*Corp. V. Maxwell,* 468 F. 2d 1326 (2d Cir. 1972).

        With respect to the Federal Claims, because each Federal Statute permits

Nationwide service of process, the trend is to consider defendants nationwide contacts, not

just within the forum state. *See In Re Libor Financial Instruments Lit*, 2015 WL 4634541,

at \*18 (S.D.N.Y. 2015); *In re Terrorist Attacks,* 349 F. Supp.2d 765, 806 (S.D.N.Y.

2005)(Where jurisdiction is asserted under the ATA's service provision, the 'relevant

inquiry under such circumstances is whether the defendant has minimum contacts with the

United States as a whole [to satisfy Fifth Amendment due process requirement], rather

than... with the particular state in which the federal court sits."(citations omitted.)

        In *Licci III*, the Second Circuit held that the exercise of specific personal

jurisdiction over LCB squared with Constitutional Due Process, and the Court recognized

that the transaction of business in New York by defendant Lebanese Canadian Bank based

on its use of a correspondent bank account in New York was the type of purposeful

availment traditionally recognized as constitutionally proper:

> "We pause to note that, despite the fact that section 302(a)(1) of New York's long-arm statute and constitutional due process are not coextensive, and that personal jurisdiction permitted under the long-arm statue may theoretically be prohibited under due process analysis, we would expect such cases to be rare. It would be unusual, indeed if a defendant transacted business in New York and the claims asserted arose from that business activity within the meaning of section 302(a)(1), and yet, in connection with the same transaction of business, the defendant cannot be found to have purposefully availed itself of the privilege of doing business in the forum and [to have been able to ] foresee being hauled into court there."

*LICCI III,* 732 F.3d 161, 170 (2d Cir. 2013)..

Thus, in this case, there is no question that the SAC alleges that UBS AG and its subsidiary UBS Securities LLC, actively traded NYMEX Platinum and Palladium Contracts over the NYMEX during the relevant time period in 2008 when the market was allegedly caused to crash due to their manipulative conduct and conspiracy. SAC ¶¶ 89-103.

As such, UBS AG had to maintain a United States dollars margin account which it most likely did through its subsidiary UBS Securities LLC. Indeed, because UBS Securities LLC is actually a clearing house member of the NYMEX Exchange, UBS Securities LLC had access to the NYMEX and allegedly placed trades on behalf of UBS AG and did so in NYMEX Platinum and Palladium upon information and belief. Thus, this case presents an even greater example of specific personal jurisdiction than *Licci* because an actual subsidiary of defendant UBS AG, UBS Securities, LLC is acting as a correspondent bank and/or clearing firm for its principal UBS AG. *See also* In *Gucci America, Inc. v. Weixing Li,* 135 F. Supp.3d 87 (S.D.N.Y. 2015) *on remand from,* 768 F.3d 122 (2d Cir. 2014).

**B.      Because UBS AG's conduct was related to Ms. Levy's Claims for Losses, the second prong of the Purposeful availment test satisfies Due Process.**

The second prong of the Constitutional Due Process is also easily met, because Ms. Levy's cause of action relating to her losses on the NYMEX Exchange in connection with her Platinum investments is related to UBS AG and UBS Securities LLC trading over the same exact Exchange, in the same exact commodity (Platinum) during the same time frame. UBS AG's position that Ms. Levy had to be a customer of UBS is simply not correct, and the purposeful availment test looks at the contacts between the defendant and the Forum, not

-7-

between parties. *See Licci, III,* 732 F.3d 161, 170 (2d Cir. 2013.)

Because Ms. Levy blames UBS AG for going along with the other auctioneer defendants by exerting a short squeeze on the NYMEX Futures Market on August 15, 2008 and crashing the market to exit its own short positions at a tidy profit; her suit is substantially related to UBS AG's contacts with New York to satisfy the due process requirement of "Relatedness."

Courts in this district have evaluated whether the transaction of business in New York by a defendant foreign bank has some relatedness to the cause of action. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir.2007)(quoting *Henderson v INS*, 157 F.3d 106, 123 (2d Cir. 1998). Put otherwise, the conduct was not " such that the [transaction] is not completely unmoored from the [claim]" *Strauss v. Credit Lyonnais, S.A.* 2016 WL 13055160 *9 (quoting the New York Court of Appeals in *Licci v. Lebanese Canadian Bank*, 20 N.Y. 3d 327, 339, 960 N.Y.S.2d 695 )

Indeed under this permissive standard, the nexus is satisfied where "at least one element [of the plaintiff's] claim arise from the [defendant's] New York contacts. *Strauss v. Credit Lyonnais, S.A.* 2016 WL 13055160 *9 (E.D.N.Y March 31, 2016.) Thus, in the case at bar, the defendant's continuous argument that some of the nefarious conduct happened in London is of no moment, because only some, not all of the conduct involved in the entire scheme, need have occurred in the United States to satisfy the "relatedness" prong of the Due Process analysis.

Thus, it was the very trading out of positions by UBS AG through its agent UBS Securities LLC.[1]during the relevant time period in 2008 when Ms. Levy was also an investor on

---

[1]UBS Securities LLC. is liable as an aider and abetter.

-8-

the NYMEX, that defendant UBS AG created a short squeeze by short-selling its positions in

excess of positions limited and based on price artificiality due to the rigged prices determined in

the London Physical Market, that caused Ms. Levy to receive a margin call that stopped her out.

This type of exclusion of competitors is obviously based on this sudden loss of value of her

NYMEX Platinum contract positions without any fundamental reasons. Because UBS AG was

admittedly trading during this time period on the NYMEX, the Court should take judicial notice

of that admitted fact. *See Def. Joint Mem Law p. 19.*; Thus, it was defendant UBS AG's alleged

conduct in part that contributed to the price artificiality causing a short squeeze of NYMEX

Platinum upon information and belief on August 15, 2008.

## C.   **Because UBS AG's conduct in London effected the NYMEX markets, it is also subject to jurisdiction under the Effects test.**

In addition to the traditional analysis discussed above requiring a transaction of

business in the forum state that is somewhat "related" to the in-forum suit, there is another

distinct test that courts in this district have used to exercise specific jurisdiction called the

"Effects Test." This unique application of Specific Jurisdiction differs from the traditional

"transaction of business test" because under the "Effects Test," a defendant can have absolutely

no other transaction of business in the forum state other than the effect that it caused in the forum

from abroad. Under the Effects test, foreseeability is not enough, and only contact with the

forum state must be intentionally aimed at the forum state by the out-of-state defendant causing

harm in the forum state. As the Second Circuit observed in *Leasco v. Data Processing*

*Equipment Corp. v. Maxwell*, 468 F.2d 1326, 1341: (2d Cir. 1972):"[t]he Classic illustration is

the man who shoots a bullet across a state boundary."*See Calder v. Jones,* 465 U.S.783, 104 S.

-9-

Ct. 1482 (1984).

      The Effects test has been well-recognized under federal securities law which are quite similar to federal commodities law. *See Eskofot A/S v. E.I. Du Pont Nemours & Co.,* 872 F. Supp. 81, 87 (S.D.N.Y. 1995); *see Schoenbaum v. Firstbrook,* 268 F. Supp 385, 392 (S.D.N.Y. 1967). The Supreme Court of the United States refined the Effects Test in *Morrison v. National Australia Bank, Ltd.,* 561 U.S.247 (2010) by superimposing a transaction test on foreign defendants requiring that either the conduct occurred over a United States Exchange or that some conduct occurred in the United States giving rise to the Cause of Action. Thus, in *Morrision v. National Australia Bank, Ltd.,* subject matter jurisdiction was declined because Rule 10-b(5) did not have extraterritorial effect absent a clear intention by Congress to apply the statute extraterritorially.

      Nevertheless, the Supreme Court and the Second Circuit continued to recognize that where some of the conduct occurred over a United States Exchange, jurisdiction would be proper. Thus, the Second Circuit clearly recognized an intent of Congress to confer specific personal jurisdiction under the Effects test over Foreign defendants. In fact, to once and for all clarify Legislative Intent, Congress acted to shore up any confusion regarding the applicability of Rule 10-b(5) abroad and reaffirmed Congressional intent to confer specific jurisdiction over events occurring abroad that effected a United States Exchange, such as the NYMEX, in the case at bar; Thus, Congress amended the Federal Securities Jurisdicitonal statute as part of Dodd Frank Reform act §929P(b) to make sure the Effects tests was alive and well. *See* 15 U.S.C.§ 78aa(b)(2) (Jurisdiction can be exercised over "conduct occurring outside the United States that has a foreseeable substantial effect within the United States.)

Thus, because the conduct of fixing Platinum prices in the London Fix had purposeful consequences regarding the value of the NYMEX futures contracts that were traded in New York, by these foreign defendants or their agents, in this case UBS Securities LLC.; jurisdiction is proper herein over UBS AG and its alleged aider and abetter UBS Securities LLC.

Because defendant UBS AG maintained Platinum and Palladium NYMEX positions contemporaneously with its agreement to obey its co-defendants instructions and adhere to the auction process in London proves that the conduct in London to fix prices was directly intended to and did effect UBS AG and the other's positions on the NYMEX where the London-rigging activity was directed so that these "hedging" transactions over the NYMEX would reap large benefits for defendants, when they traded out their Platinum and Palladium Futures positions over the NYMEX.

Defendant UBS AG's contention in its supplemental brief that it is immune from liability because it is not one of the four fixing defendants is incorrect because, the evidence suggests at the pleading stage that UBS AG cooperated fully with the Cartel and agreed to tailor its trading of physical platinum and palladium to the advantage of the cartel based not only of the admission against interest in its Plea Agreement, that in exchange for admitting to one Felony count, it will fully cooperate in this Precious Metals Investigation, In addition, the statistical evidence cited to in the SAC shows that 60% to 80% of the time, the prices at the fix were falling in value, something that could not have happened, upon information and belief, if UBS, AG one of the largest market makers in Platinum and Palladium had been acting independently.

Furthermore, defendant UBS AG's reliance on *LIBOR* in support of its argument to decline to exercise specific personal jurisdiction over it, falls short, because in *LIBOR, Gucci*

*and Licci, III,* the court only rejected plaintiff's arguments conferring general jurisdiction over the foreign defendants and not specific jurisdiction. With respect to specific jurisdiction, the New York Court did exercise over several bank defendants in similar circumstances. In fact, in *LIBOR IV,* 2015 WL 4634541 * (S.D.N.Y. 2015), Judge Buchwald distinguished *LIBOR* recognizing that the case was unique because of its global reach effecting $350 trillion dollars worth of investments world wide. The Court noted:

> "Our rulings on specific personal jurisdiction result from the unusual factual circumstances in these cases. In any ordinary fraud case involving an out-of forum defendant, specific personal jurisdiction might be available on the ground that the defendant aimed its fraudulent conduct at the plaintiff's home forum. In an ordinary case of commodities or securities fraud, specific personal jurisdiction might be available on the ground that the defendant aimed its manipulative conduct at a United States market. But LIBOR manipulation does not fit that mold.

Thus, clearly even the court in *LIBOR* recognized the well-established general rule that where a United States Exchange is involved in the claims of loses, fraud, or manipulation both personal and subject matter jurisdiction will be proper over a foreign defendant

In fact the cases relied upon by defendants including UBS, AG to escape specific personal jurisdiction are inapposite. Because the facts of each case are unique, each case requires an independent evaluation to determine whether the forum-related activity is related to the suit or whether the effect from abroad was purposefully directed at the United States. *Laydon v Mizuho Bank, Ltd.,* 2015 WL 1515358 (S.D.N.Y. 2015)(Because Libor was a global interest rate that effected many markets, Effects test was not available in the United States), *SPV Osus Ltd. v. UBS AG, Et. Al.,* 114 F. Supp. 3d. 161 (S.D.N.Y. 2015)(No jurisdiction held based on the relatedness prong where cause of action was not related to any in forum activities); *7 W. 57th Street Realty v. Citigroup, Inc.*, 2015 WL 1514539 (S.D.N.Y. 2015)(Effects Test not available in

*LIBOR* rigging scandal since the scandal occurred in 10 different currencies around the world.)

Thus, under the well-settled precedent, specific jurisdiction should be applied herein.

### D. ` Because The Exercise of Jurisdiction is Reasonable, the Constitutional Minium `````Contacts Test is Satisfied.

After satisfying the Due Process Minimum Contacts test, courts also evaluate whether the exercise of specific jurisdiction is reasonable under the totality of the circumstances. However, defendants bear the burden of proof regarding whether the exercise of personal jurisdiction is reasonable under the circumstances. *Strauss v. Credit Lyonnais, S.A.*, 2016  1305160 *19 (E.D.N.Y March 31 2016.) In this case, none of the defendants have suggested that it would be unreasonable to exercise jurisdiction over them, since they all transacted business over the NYMEX either on their own behalf or using agents, as correspondent banks, clearing members or brokers to transact business over the NYMEX Exchange. Therefore, the imposition of specific jurisdiction would be quite reasonable under the circumstances herein.

Additionally, because defendants have not argued this pont of reasonableness as an affirmative defenses, such defense is waived. *See  Strauss v. Credit Lyonnais, S.A.*, 2016 1305160 *4 (E.D.N.Y March 31 2016.)

## II.    BECAUSE THIS CASE PRESENTS THE EXCEPTIONAL CASE UNDER *DAIMLER V. BAUMAN,* WHERE DEFENDANT UBS AG HAS MADE ITSELF QUITE AT HOME IN THE UNITED STATES, GENERAL JURISDICTION SHOULD BE EXERCISED.

Because USB AG has had a substantial presence in the United States for a very long time end earns 35% of its worldwide income in the United States and employs a workforce throughout the United Stated of 19,897 employees, more than many United States companies; it

-13-

goes against the grain of our jurisprudence to preclude the exercise of all-purpose jurisdiction over UBS, AG whose operations are tied to its presence in New York, the financial capital of the world.

In *Daimler v. Bauman*, 134 S. Ct.746, 187 L. Ed.2d 624 (2014), the Court for the first time held that a subsidiary doing business in the United States on behalf of their foreign parent could not confer general jurisdiction over the foreign defendant parent corporation based on agency. In articulating this holding, the Court for the first time considered world wide revenue derived from a subsidiary's presence in the United States and held that because the United States subsidiary in *Daimler* only accounted for approximately 2.4% of the parents worldwide income, it was not reasonable to expect the foreign parent to be subject to general jurisdiciton in the United States. However, the Court did leave open the possibility that there would be an exceptional case such as in *Perkins v Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S. Ct. 413 (1952) where at foreign Defendant would be at home in the forum state.

Now, for the first time, UBS AG presents that exceptional case, because it has made itself quite at home in our forum, but refuses to submit to our jurisdiction generally. Not only does it earn 35% of its annual income form its United States contacts which are supposed to be considered under Federal Rule of Civil Procedure 4(K) not just in-state contacts that Mr. Conner has cited to in his Declaration; but also this 35% revenue is in the billions of dollars. As such, it is quite at home in the United States. UBS AG is not here just through it subsidiaries but it has its own office building right here in New York at the UBS tower located on the Avenue of the Americas. So, unlike in *Daimler*, UBS AG is here on its own and not just through its subsidiaries.

-14-

Justice Sotomayer expressed her dissent vehemently in *Daimler v. Bauman*, 134 S.

Ct.746, 187 L. Ed.2d 624 (2014), and rightfully so.  Justice Sotomayer noted in her dissent:

> "While the majority's decisional process is problematic enough, I fear that process
> leads it to an even more troubling result......This approach follows from the
> touchstone principle of due process in this field, the concept of reciprocal fairness.
> When a corporation chooses to invoke the benefits and protections of a State in
> which it operates, the State acquires the authority to subject the company to suit in
> it courts See International Shoe, 326 U.S. at 319, 66 S. Ct. 154, 90 L.Ed. 95("[T]o
> the extent that a corporation exercises the privilege of conducting activities within
> a state, it enjoys the benefits and protection of the laws of that state" such that an
> "obligatio[n] arise[s]" to respond there to suit);. . . . The majority's focus on the
> extent of a corporate defendant's out-of-state contact is untethered from this
> rationale."

*Daimler,* 134 S. Ct.  at 767 (2014).

Thus, based on the reason and logic articulted by Justice Sotomayor, UBS AG has made

itself at home in our Forum, and enjoys the benefits of residing in the forum; and therefore

should be held in this suit under the general jurisdiction of this Court.

## CONCLUSION

WHEREFORE, based on the foregoing, it is respectfully requested that defendants UBS

AG and UBS Securities LLC's motion to dismiss under Fed. R. Civ. Pro. 12(b)(6) and 12(b)(2)

be denied in full, and for all further an other releif deemed just and proper; or in the alternative

Plaintiff requests jurisdictional discovery, since she has established a prima facie case of

jurisdiction.

Respectfully Submitted,

/Susan Levy/
Susan Levy, Esq.
40 East 10th Street, Suite 2K

-15-

/Susan Levy/
Susan Levy, Esq.
40 East 10th Street, Suite 2K
New York, New York 10003
(212) 962-1782 (tel)
(212) 962-3711 (fax)