USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 06/09/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                         :

SUSAN LEVY,                                 :

                                                         :          1:15-cv-7317-GHW

                                       Plaintiff,  :

                                                          :          MEMORANDUM OPINION
                     -v -                                    :          AND ORDER

BASF METALS LIMITED, BASF
CORPORATION, GOLDMAN SACHS
INTERNATIONAL, GOLDMAN SACHS
GROUP, INC., GOLDMAN SACHS & CO. INC.,
GOLDMAN SACHS EXECUTION &
CLEARING, LP, HSBC BANK USA, NA, ICBC
STANDARD BANK PLC, UBS AG, UBS
SECURITIES LLC, LONDON PLATINUM AND
PALLADIUM FIXING COMPANY LTD., and
JOHN DOES #1-40,

                                      Defendants.
-----------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

## I.    **INTRODUCTION**

      For the last nine years, Plaintiff Susan Levy has been searching for someone to make her whole for a failed investment. In 2008, Ms. Levy, an attorney, lost her entire investment in New York Mercantile Exchange ("NYMEX") futures contracts for the precious metal platinum. Four years later, in 2012, Ms. Levy filed a lawsuit in the U.S. District Court for the Eastern District of New York, alleging that various NYMEX traders and John Doe defendants colluded to crash the market and manipulate the price of these contracts, thereby causing her losses. That case was transferred to this district, and was voluntarily dismissed following a settlement on December 3, 2014. She now claims that, thanks to the information contained in a putative class action complaint filed on November 25, 2014—when her first lawsuit was still pending—she has discovered the true cause of her losses.

The class action complaint alleged that defendants BASF Corporation ("BASF Corp."), BASF Metals Limited ("BASF Metals" and, together with BASF Corp., "BASF"), Goldman Sachs International ("Goldman Sachs"), HSBC Bank USA, N.A. ("HSBC"), ICBC Standard Bank Plc ("ICBC"), UBS AG, UBS Securities LLC ("UBS Securities" and, together with UBS AG, "UBS"), and the London Platinum and Palladium Fixing Company Ltd. ("LPPFC") manipulated and artificially suppressed the price of physical platinum and palladium. After copying a significant number of the factual allegations from the class action complaint, attempting to connect those facts to her 2008 injury, and adding twenty John Doe defendants (together with the above-named financial institutions and organizations, "Defendants"), Plaintiff filed the complaint in this case in September 2015. Ultimately, Ms. Levy's claims—all of which arise out of the 2008 injury—have been brought too late, and there is no equitable reason that would permit her to bring yet another complaint to recover her nearly decade-old failed investment. Defendants' motion to dismiss the Second Amended Complaint ("SAC") is therefore GRANTED.

## II. BACKGROUND[1]

Ms. Levy's suit stems from the alleged manipulation of the futures market for the precious metals platinum and palladium. Because Ms. Levy relies substantially on the facts presented in the complaint brought in the related class action, and incorporates that complaint by reference, the Court refers the reader to its opinion and order granting the motion to dismiss that complaint. *See In re Platinum and Palladium Antitrust Litig.*, 14-cv-9391-GHW, Dkt. No. 102 ("Class Action Complaint"); Dkt. No. 179, 2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017) ("Class Action Opinion"); *see also* SAC, Dkt. No. 121, ¶ 260. The Class Action Opinion contains a more fulsome description of

---

[1] Unless otherwise noted, the facts are taken from the Second Amended Complaint ("SAC"), Dkt. No. 121, and are accepted as true for the purposes of this Rule 12(b)(6) motion. *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

the London Platinum and Palladium Market ("LPPM"), the process by which the Defendants "fixed" the price of these precious metals through a twice-daily auction process, and Defendants' alleged collusion to manipulate the market. Assuming familiarity with the facts presented in that opinion, the Court summarizes below the facts relevant to deciding Defendants' motion to dismiss Ms. Levy's complaint.

Ms. Levy purchased NYMEX platinum futures contracts in 2008.[2] SAC ¶ 155. According to the SAC, beginning in the summer of 2008, the prices of NYMEX platinum "began to collapse" and Ms. Levy's investment lost value. SAC ¶ 474. On August 15, 2008, Ms. Levy received a margin call, requiring her to liquidate her platinum positions and sell her investments at a loss. SAC ¶ 475. On that day, Ms. Levy alleges that there was a "seismic gyration crashing the market," resulting in her "total losses." SAC ¶¶ 24, 478, 575. Ms. Levy claims that this loss was due to collusion between Defendants to fix the price of precious metal futures contracts through the London-based auction process. She alleges that Defendants violated the Commodities Exchange Act, 7 U.S.C. § 1, *et seq.* ("CEA"), the Sherman Act, 15 U.S.C. §§ 1-2 and New York State antitrust laws (N.Y. Gen. Bus. Law § 340, *et seq.*), and the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961, *et seq.* ("RICO") in working together to manipulate the price of platinum.

These allegations are not so dissimilar from those Ms. Levy raised in her 2012 lawsuit. In that case, Ms. Levy also alleged that various individuals and corporations colluded to manipulate the price of NYMEX platinum contracts. *See Levy v. Joseph Welsh et al.*, 12-cv-2056 (E.D.N.Y.), 13-cv-01858 (S.D.N.Y.).[3] There, she alleged that the defendants in that case—including forty John Doe

---

[2] Ms. Levy does not provide specific dates for her purchase of platinum contracts, but on page 130 of her 142-page complaint notes that she purchased NYMEX Platinum Contracts "in the winter and spring of 2008." SAC ¶ 617.

[3] The Court takes judicial notice of the docket sheet and operative complaint in *Levy v. Joseph Welsh et al.*, 12-cv-2056 (E.D.N.Y.), 13-cv-01858 (S.D.N.Y.) and *id.* Dkt. No. 63 ("2012 Am. Compl."). The Second Circuit has explained that the harm in considering material extraneous to the complaint on a motion to dismiss is that the plaintiff does not have "notice that the material may be considered." *See Mangiafico v. Blumenthal*, 471 F.3d 391, 397 (2d Cir. 2006) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)) (holding that

3

defendants—caused "sudden gyrations" in the market that led to the August 15, 2008 margin call and her resulting monetary losses. 2012 Am. Compl. ¶ 255. Just as she does here, in that case, Ms. Levy brought claims under the CEA, RICO, and sections 1 and 2 of the Sherman Act seeking remedies for her 2008 injury. Ms. Levy voluntarily dismissed the complaint in that lawsuit on December 2, 2014. *Levy v. Welsh*, 13-cv-01858, Dkt. No. 120.

Although there are a number of similarities between this case and her previous one, in the complaint in this action, Ms. Levy borrows heavily from the factual allegations contained in the Class Action Complaint. SAC ¶ 260 (incorporating by reference the data presented in the Class Action Complaint). That complaint alleged that over the class period of January 1, 2008 to November 30, 2014, Defendants worked together to suppress the price of platinum and palladium at prices lower than market forces would otherwise have set. Class Action Compl. ¶¶ 1, 4, 97. As support for this allegation, the class action plaintiffs presented data demonstrating large "anomalous" downward spikes in the prices of the platinum and palladium shortly before the time of the twice-daily auction calls during which Defendants "fixed" the price of these precious metals. Class Action Compl. ¶ 92. The Class Action Complaint does not allege, however, that at any point during the class period Defendants' alleged price suppression caused the class members to suddenly lose their entire investment. To the contrary, the Class Action Complaint notes that palladium prices "have been in a general upward trend" since the beginning of the class period and that platinum prices *tripled* from January 2000 through December 2013. Class Action Compl. ¶¶ 100, 125 & fig. on p. 41.

---

"docket sheets are public records of which the court could take judicial notice"). Because Ms. Levy herself filed the complaint in the Eastern District of New York in 2012 and litigated the case through its conclusion, and because the existence of this previous action was raised in both Defendants' motion to dismiss and Plaintiff's opposition to that motion, there is no question that she had notice of these materials. The Court does not, however, take judicial notice of the truth of the matters asserted in the 2012 Amended Complaint.

4

Because the Class Action Complaint does not suggest the kind of loss that Ms. Levy alleges in the SAC, Ms. Levy makes additional allegations in an apparent attempt to make her 2008 loss cohere with the data asserted in the class action and the theory of damages that data was presented to support. First, Ms. Levy argues that the August 15, 2008 margin call and her resulting loss occurred when Defendants "decided to crash the market by covering their short positions." SAC ¶ 11. Ms. Levy also states that the Defendants "artificially suppressed prices en mass in August of 2008," which caused members of the public to sell their positions, and that those sales caused a collapse of the market. SAC ¶ 183. In another part of the SAC, Ms. Levy contends the August 2008 market crash was the result of Defendants "selling off their large holdings in the Physical Market in London to create fraudulent profits" throughout the winter, spring, and summer of 2008. SAC ¶ 422. Yet in that same paragraph she also alleges that the August margin call was "sudden and unexpected" and later claims that the suppression of market prices by Defendants was similarly "sudden." SAC ¶¶ 422, 575. In addition to these disparate and inconsistent allegations, Ms. Levy alleges that the Defendants caused the crash on the market by "failing to properly coordinate their scheme with other precious metals traders who were also manipulating the market in the same fashion as the platinum and palladium traders including gold, palladium and silver." SAC ¶¶ 11, 485. That is, Ms. Levy contends that her loss was the result of scheming traders in distinct markets failing to coordinate their illicit acts well enough.

### III. <u>PROCEDURAL HISTORY</u>

On September 16, 2015, Plaintiff filed the complaint in this action, alleging causes of action under the CEA, RICO, sections 1 and 2 of the Sherman Act, New York State antitrust laws, for unjust enrichment, and for tortious interference with prospective advantage.

Plaintiff amended her complaint once as a matter of right in January 2016, and again in April 2016 in response to Defendants' March 14, 2016 motion to dismiss. On August 31, 2016, Defendants again moved jointly to dismiss the SAC. Dkt. No. 129. In addition to filing a joint

5

memorandum of law, certain groups of defendants also filed their own memoranda of law in support of the motion to dismiss. Dkt. Nos. 132 (BASF), 133 (LPPFC), 134 (UBS), 136 (ICBC). Plaintiff filed her opposition on September 29, 2016, Dkt. No. 153, and Defendants replied on October 13, 2016, Dkt. No. 159.

Because the statute of limitations for all of Plaintiff's claims has expired, and because there is no equitable reason to permit tolling of the statute of limitations in this case, Plaintiff's CEA, RICO, and Sherman Act claims are dismissed. The Court declines to extend supplemental jurisdiction over the remaining state law claims in Plaintiff's complaint. Defendants' motion to dismiss the SAC is therefore GRANTED.

## IV. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 544).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S.

6

at 679. The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). However, a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557).

Generally, courts are instructed to read *pro se* complaints with "special solicitude" and interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75, 477 (2d Cir. 2006). However, where plaintiff is an attorney—as Plaintiff is here—she is not entitled to the same liberal construction as would other *pro se* plaintiffs. *Gundlach v. IBM Japan, Ltd.*, 983 F. Supp. 2d 389, 393 (S.D.N.Y. 2013), *aff'd sub nom. Gundlach v. Int'l Bus. Machs. Inc.*, 594 F. App'x 8 (2d Cir. 2014); *see also Fenner v. City of N.Y.*, No. 08-CV-2355, 2009 WL 5066810, at *3 (E.D.N.Y. Dec. 21, 2009) ("Although *pro se* litigants are generally entitled to a broad reading of their submissions because of their lack of familiarity with the law, that is not the case with attorneys who have chosen to proceed *pro se*. It is well settled in the Second Circuit that since the reason for affording *pro se* litigants special deference is not present when the litigant is an attorney, no special consideration is required."). As such, the Court will read the SAC as it would any other counseled complaint.

V.  **DISCUSSION**

At the motion to dismiss stage, dismissal of a complaint on the grounds that the statute of limitations has expired is appropriate only if the "complaint clearly shows the claim is out of time." *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 266 (S.D.N.Y. 2013) (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)); *see also Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 209 (S.D.N.Y. 2014) ("Because the defendants bear the burden of establishing the expiration of the statute of limitations as an affirmative defense, a pre-answer motion to dismiss on this ground may be granted only if it is clear on the face of the complaint that the statute of limitations has

7

run.") (citation omitted). Here, Plaintiff repeatedly emphasizes that she suffered harm in August 2008 when she was issued a margin call on her platinum investments, and the SAC contains an affirmative argument for equitable tolling of the statute of limitations on the basis of fraudulent concealment. SAC ¶¶ 641-46. The untimeliness of Plaintiff's claims is apparent on the face of her complaint.

The Court will assume, for purposes of the statute of limitations analysis, that Plaintiff has otherwise stated a valid cause of action under each of the federal statutes she raises in the SAC. *See, e.g.*, 2 Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 320a at 283 (3d Ed. 2007) ("[T]he best way to analyze the limitation issue is to assume that the antitrust laws have been violated and then consider when the antitrust cause of action has accrued and whether other factors may . . . delay the running of the statute."). The Court notes, however, that there are serious questions with regard to the plausibility of Plaintiff's allegations. For instance, a significant portion of the evidence Plaintiff cites as support for the "anomalous price moves" around the time of the London fixing calls analyzes data from after 2008—that is, after Plaintiff alleges she participated in the platinum market. *See, e.g.*, SAC ¶¶ 270-82 (discussing price movements in 2009, 2010, and 2012). That data, while voluminous, does not bolster the contention that Defendants' alleged scheme caused Plaintiff's specific injury in 2008.

Further, Plaintiff fails to logically tie the theory underlying the class action data to her injury. Plaintiff's injury is not the kind of injury the Class Action Complaint says occurred as a result of the Defendants' alleged manipulation. The class action plaintiffs' theory of downward price suppression around the time of the Fixing—which nevertheless resulted in a three-fold increase in the price of platinum from 2000 to 2013—does not explain a sudden market crash and margin call wiping out an individual's investment. Finally, Plaintiff contends that the August 2008 market collapse that led to her injury occurred because NYMEX traders who were trading in precious metals other than platinum "failed to refine their manipulative skills" and poorly coordinated their contemporaneous

8

schemes with one another. *See* SAC ¶ 11 (explaining that the margin call was the result of platinum traders "generally failing to properly coordinate their scheme with other precious metals traders who were also manipulating the market in the same fashion as the platinum and palladium traders including gold, palladium and silver"); *id.* ¶¶ 479-86. Essentially, Plaintiff alleges that Defendants failed to be good schemers with other parties who also happened to be orchestrating their own, independent manipulative schemes in markets separate and distinct from the platinum market at issue in this case. Those other parties are not named as defendants in this action. While the Court is thus aware that there are potential questions as to whether the SAC states a plausible legal claim, it need not reach that issue here, because all of Plaintiff's claims are barred by the applicable statutes of limitations.

   A. Plaintiff's CEA Claims Are Untimely

Plaintiff brings various claims under the Commodities Exchange Act, arguing generally that Defendants manipulated the market, made false and misleading reports about the prices of platinum, and violated the antifraud provisions of that statute. Claims brought under the CEA must be raised "not later than two years after the date the cause of action arises." 7 U.S.C. § 25(c). Although the CEA does not define when a cause of action arises, "courts apply a 'discovery accrual rule' wherein 'discovery of the injury, not discovery of the other elements of a claim, is what starts the clock.'" *In re Commodity Exch., Inc.*, No. 14-md-2548, 2016 WL 5794776, at *27-28 (S.D.N.Y. Oct. 3, 2016) (quoting *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 697 (S.D.N.Y. 2013) (other citations omitted)). A plaintiff has discovered an injury under the CEA when "circumstances would have suggested to a person of ordinary intelligence the probability that he had been defrauded." *Shak v. JPMorgan Chase & Co.*, 156 F. Supp. 3d 462, 473-74 (S.D.N.Y. 2016).

Plaintiff contends that her cause of action accrued in December 2014 when the class action was filed, and that the case she filed in 2012 "in no way apprised her of the conspiratorial actions of the defendants herein." Pl.'s Opp'n at 5. However, Plaintiff discovered her injury, thus beginning

9

the statute of limitations for her CEA claims, as early as June 2008 and no later than August 15, 2008, when she was forced to pay a margin call and lost her entire investment. That is, Plaintiff had *actual* notice of her injury almost seven years before filing the SAC. Moreover, Plaintiff brought CEA claims against other defendants in 2012. *See Levy v. Joseph Welsh, et al.*, 12-cv-2056 (E.D.N.Y.), 13-cv-01858 (S.D.N.Y.). Having filed a lawsuit asserting a cause of action under the CEA for the same financial loss asserted here, there is no doubt that Plaintiff had discovered her injury more than two years before initiating this case. Because Plaintiff had actual notice of her injury in 2008, her 2015 CEA claims are untimely and are therefore barred absent equitable tolling.

### B. Plaintiff's RICO Claims Are Untimely

Plaintiff also alleges that Defendants were part of an illegal racketeering enterprise in violation of RICO. Plaintiff also brought these claims too late. RICO claims are subject to a four-year statute of limitations. *Rotella v. Wood*, 528 U.S. 549, 553 (2000). As with the CEA, the RICO statute is silent as to when a RICO cause of action accrues. Thus, as with CEA claims, the Second Circuit has adopted a "discovery accrual rule" for RICO claims where "discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." *Koch v. Christie's Int'l. PLC*, 699 F. 3d 141, 148 (2d Cir. 2012) (quoting *Rotella*, 528 U.S. at 555).

As stated above, Plaintiff had actual notice of her injury by August 2008. As with her claims under the CEA, Plaintiff's argument that she did not know of the specific wrongdoing of the specific defendants in this case has no significance in light of RICO's accrual rule, as courts have held that a plaintiff need not know all of the specific elements of the claim in order for the statute of limitations to run, which includes knowledge of the Defendants' identities. *See, e.g.*, *Robert L. Kroenlein Tr. ex rel. Alden v. Kirchhefer*, 764 F.3d 1268, 1278 (10th Cir. 2014) ("[A] RICO victim need not have actual knowledge of exactly who committed the RICO predicate act resulting in the injury for a civil RICO claim to accrue."). Because Plaintiff had actual notice of her injury by August 2008,

her claims accrued at that time—seven years before she filed her complaint. Plaintiff's claims are not timely and are therefore barred absent equitable tolling.

### D. Plaintiff's Antitrust Claims Are Untimely

Plaintiff alleges that Defendants' alleged manipulation of the platinum and palladium market constitutes a conspiracy in restraint of trade in violation of Section 1 of the Sherman Act, and that LPPFC monopolized the market for these precious metals in violation of Section 2 of the Sherman Act. The statute of limitations for a claim of antitrust injury under the Sherman Act is four years from the date of accrual. 15 U.S.C. § 15(b). The Supreme Court has explained that

> [g]enerally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business . . . [T]his has usually been understood to mean that each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and that, as to those damages, the statute of limitations runs from the commission of the act.

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971). The Court analyzes claims under section 1 of the Sherman Act differently than it does claims under section 2.

### i. Section 1 Claims

Section 1 of the Sherman Act prohibits contracts, combinations, and conspiracies in restraint of trade. 15 U.S.C. § 1. Plaintiff alleges that Defendants conspired to manipulate the prices of NYMEX platinum by purposefully fixing the prices . . . to be artificially lower and/or higher than the normal market prices." SAC ¶ 567. This conduct allegedly caused her injury when, as a direct purchaser of NYMEX Platinum contracts, she was forced to pay higher than normal prices for inflated contracts, and suffered losses in August 2008 when the market crashed. SAC ¶¶ 557, 572, 575.

Under *Zenith*'s accrual rule, "if a plaintiff feels the adverse impact of an antirust conspiracy on a particular date, a cause of action immediately accrues to him to recover all damages incurred by that date and all provable damages that will flow in the future from the acts of the conspirators on that date," assuming the plaintiff sues within the requisite four years from the accrual date. *Zenith*

11

*Radio Corp.*, 401 U.S. at 339. There are exceptions to this accrual rule if the damages plaintiff alleges are speculative, or if the alleged antitrust violation consists of a series of acts that continue to harm plaintiff over time. Under the speculative damages exception, if the "amount and nature [of the alleged antitrust damages] are unprovable," courts will not apply the normal accrual rule for the Sherman Act's four-year statute of limitations. *Rite Aid Corp. v. Am. Ex. Travel Related Servs. Co.*, 708 F. Supp. 2d 257, 266 (E.D.N.Y. 2010); *see Higgins v. N.Y. Stock Exch., Inc.*, 942 F.2d 829, 832 (2d Cir. 1991) ("The only exception to the date-of-injury rule is the rare case in which the damages caused by an antitrust injury are so speculative that the court is unwilling to estimate them."). This rule does not require that damages be calculable to the point of "mathematical precision," but a court will apply the exception if it cannot "reasonably estimate[]" the nature or amount of damages alleged. *Rite Aid Corp.*, 708 F. Supp. 2d at 266.

In addition to the speculative damages exception, courts will not apply the date-of-injury accrual rule in the case of a continuing antitrust violation. When an alleged violation "consists of a series of acts that repeatedly invade a plaintiff's interest and continue over time, a cause of action may accrue each time the plaintiff is injured anew." *Id.* at 267. In that circumstance, the statute of limitations would not only run from the initial antitrust act, but would run from each "overt act." An overt act must (1) be "new and independent" from the previous antitrust violation, and (2) "inflict new an accumulating injury on the plaintiff." *Id.* at 268 (citing *DXS, Inc. v. Siemens Med. Sys., Inc.*, 100 F.3d 462, 467 (6th Cir. 1996)) (internal quotation marks omitted). Each overt act that makes up a continuing antitrust violation begins the statutory period, although a plaintiff cannot use a separate and "new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." *Klehr v. A.O. Smith, Corp.*, 521 U.S. 179, 190 (1997).

Neither the continuing violation exception nor the speculative damages exception applies here. This is not the "rare case" described in *Higgins* where the Court cannot determine the nature

or amount of Plaintiff's damages—Plaintiff knows exactly how much she lost when her investment bottomed out in 2008. *See* SAC ¶¶ 667-68 (describing monetary damages sought). Additionally, the antitrust violation alleged in the SAC is not a continuing violation wherein Plaintiff was injured by multiple distinct events. Plaintiff only alleges that she suffered harm following the August 15, 2008 margin call; no other overt acts subsequent to that injury date would support a later accrual date for Plaintiff's Sherman Act claims. As the exceptions to the date-of-injury rule are inapplicable here, Plaintiff's section 1 claims accrued the date she was injured. At the latest, that date is August 15, 2008. After that date, any injury that could be traced to the antitrust violation ceased. She thus could have brought her claim within four years of that accrual date—that is, no later than August 2012. Because Plaintiff did not bring her section 1 claim within the statute of limitations, that claim is untimely.

    ii. <u>Section 2 Claims</u>

Section 2 of the Sherman Act prohibits monopolization of a relevant market. 15 U.S.C. § 2. Plaintiff alleges that LPPFC, through its four members, monopolized "the interstate trading of Physical and NYMEX Platinum Futures Contracts for delivery in 2008 to 2014." SAC ¶ 586. She claims that LPPFC acquired and maintained monopoly power during the relevant time period, "foreclos[ing] competitors such as plaintiff herein from effectively competing in the market . . . [and] causing plaintiff as a competitor to lose her holdings by being squeezed out of the Market." SAC ¶ 590. As with her section 1 claims, Plaintiff contends that Defendants' section 2 violations caused her monetary losses "starting in the summer or [sic] 2008 and thereafter when defendants were price-fixing by artificially suppressing prices." SAC ¶ 591.

The Second Circuit has held that, with regard to the statute of limitations for section 2 claims, the accrual of the cause of action depends on whether the plaintiff is a purchaser or a competitor. A purchaser in a monopolized market does not suffer harm "until the monopolist actually exercises its illicit power to extract an excessive price." *Berkey Photo, Inc. v. Eastman Kodak*

*Co.*, 603 F.2d 263, 295 (2d Cir. 1979). A monopolists' competitor, by contrast, "may be injured at the time the anticompetitive conduct occurs." *Id.*

Here, Plaintiff alleges that she is a competitor of Defendant LPPFC, meaning that her section 2 claims accrued at the time the monopolistic conduct occurred.[4] Even so, Plaintiff suffered no new harm attributable to any given actor in any platinum market after August 15, 2008, when she lost her investment and exited that market. Because all Sherman Act claims accrue "when a defendant commits an act that injures a plaintiff's business," and Plaintiff's injury occurred in 2008, she had four years from the date of her injury to file her section 2 claim against LPPFC. Because she filed this complaint in 2015—seven years after her injury—her section 2 claim is untimely.

### C. Plaintiff is Not Entitled to Equitable Tolling[5]

Recognizing that her claims are untimely, Plaintiff argues that she is entitled to equitable tolling because Defendants fraudulently concealed their unlawful conduct. The doctrine of equitable tolling should only be applied in "rare and exceptional circumstances." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). The Second Circuit has found tolling to be appropriate where "extraordinary circumstances" prevented the plaintiff from filing a complaint on time and where "the party seeking equitable tolling . . . acted with reasonable diligence throughout the period he seeks to toll." *Id.*

---

[4] As noted above, there are significant issues regarding the plausibility of many of Ms. Levy's assertions—including that she, as the holder of approximately $280,000 in leveraged platinum options, was a competitor of the LPPFC.

[5] In her opposition to Defendants' motion to dismiss, Plaintiff argues that she is "automatically entitled to a tolling of the statute of limitations at this stage of the litigation, since she filed while the Class Action is still pending." Pl's Opp'n at 3. The Supreme Court has held that, in the context of an individual plaintiff who files a suit separately from a pending class action, "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353-54 (1983) (quoting *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974)); *see also In re WorldCom Sec. Litig.*, 496 F.3d 245, 254-55 (2d Cir. 2007) (holding that *American Pipe* tolling applies to class members who file individual suits before class certification is resolved). This tolling doctrine is inapplicable in this case, however, because Plaintiff's claims accrued—and expired—long before the class action litigation was commenced. Thus to the extent Plaintiff seeks tolling of her statutes of limitations, she seeks tolling for the seven years between her injury and filing of the SAC in September 2015.

(citing *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996)). The doctrine of equitable tolling is applied in the district court's discretion "as a matter of fairness" when a plaintiff has been prevented from exercising her rights. *Id.* A court's decision to apply or decline to apply equitable tolling is reviewed for abuse of discretion. *Zerilli–Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 81 (2d Cir. 2003).

Plaintiff contends that equitable tolling should apply on the basis of fraudulent concealment. In order for equitable tolling to be available on that basis, a plaintiff must prove that (1) the defendant concealed the existence of the unlawful conduct; (2) the plaintiff remained ignorant of the violation until sometime within the statute of limitations, and (3) this continuing ignorance was not the result of a lack of diligence. *In re London Silver Fixing, Ltd. Antitrust Litig.*, No. 14-MD-2573, 2016 WL 5794777, at *24-25 (S.D.N.Y. Oct. 3, 2016). "A claim of fraudulent concealment must be pleaded with particularity, in accordance with the heightened pleading standards of Rule 9(b)." *Id.* (citing *Hinds Cty., Miss. v. Wachovia Bank N.A.*, 700 F. Supp. 2d 378, 399 (S.DN.Y. 2010)).

Here, Plaintiff meets the first prong of the fraudulent concealment test because the Defendants' alleged manipulation and misrepresentation of the Fix Price of platinum was self-concealing by its very nature. *See, e.g.*, *In re Nine West Shoes Antitrust Litig.*, 80 F. Supp. 2d 181, 193 (S.D.N.Y. 2000) ("[S]ince bid-rigging and price-fixing conspiracies are deemed self-concealing, a plaintiff is not required to show defendants took independent affirmative steps to conceal their conduct.").

Regardless, the Court cannot find the second prong of the test has been met here, as Plaintiff was not continually ignorant of the existence of unlawful conduct during the pendency of the statute of limitations. Plaintiff filed a similar complaint seeking damages from the same 2008 injury in May 2012. Courts in this district have found that where a Plaintiff has already filed actions alleging similar claims against different defendants, "declining to apply equitable tolling to Plaintiff's claims would not prevent plaintiff from having his day in court." *Wang v. Palmisano*, 51 F. Supp. 3d

521, 533 (S.D.N.Y. 2014). In *Wang v. Palmisano*, the court found that a plaintiff who had previously brought an action against defendant's employer alleging the same claims could not demonstrate why enforcing the statute of limitations would be unfair "in light of Plaintiff's decision to bring parallel actions against [other defendants] over the course of a half-decade." *Id.*; *see also Parada v. Banco Industrial De Venezuela, C.A.*, 753 F.3d 62, 71 (2d Cir. 2014) (finding that plaintiff was not entitled to equitable tolling when her actions "showed that she was capable of taking legal action much earlier").

In this case, Plaintiff knew of her loss in August 2008. She also knew of potential causes of action in 2012, when she brought a lawsuit alleging claims under the CEA, RICO, and the Sherman Act. She named John Doe defendants in that action, and could have determined if other relevant parties were complicit in the alleged price manipulation of NYMEX precious metals contracts over the more than two years that case remained active. Plaintiff voluntarily dismissed her first complaint in December 2012 after a settlement was reached between the parties. Despite her contention that the Class Action Complaint alerted her to Defendants' alleged wrongdoing, she did not learn anything new about her injury or any potential claims supporting remuneration for her injury by virtue of the November 2012 Class Action Complaint. Indeed, the only thing she potentially did not already know prior to commencement of the class action is the theory of price suppression during the time of the Fixing calls. But, as stated above, the facts Plaintiff alleges to bridge the gap between that theory and her actual injury were not included in the Class Action Complaint and raise serious questions as to the plausibility of her allegations. The Court does not accept that the Class Action Complaint and the facts contained in it justify equitable tolling. Simply put, wherever Plaintiff pulled these bridging allegations from, it was not the Class Action Complaint.

Plaintiff was not "prevented in some extraordinary way" from pursuing her claims. *Johnson*, 86 F.3d at 12. The Court therefore cannot find that "as a matter of fairness" she is entitled to bring her claims seven years after her causes of action accrued. *Id.* Considering all of the information

before it, the Court concludes that equitable tolling is not warranted here on the basis of fraudulent concealment or otherwise. Therefore, Plaintiff's claims are time-barred.

### D. The Court Declines to Extend Supplemental Jurisdiction Over Plaintiff's Remaining State Law Claims

In addition to her claims under the CEA, RICO, and the Sherman Act, Plaintiff also asserts state law claims under New York State antitrust law, for unjust enrichment, and for tortious interference with prospective advantage, and notes that this Court may exercise pendent jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a). Under 28 U.S.C. § 1367(c)(3), the exercise of supplemental jurisdiction over Plaintiff's remaining state law claims is within the Court's discretion if it has "dismissed all claims over which it has original jurisdiction." The Second Circuit counsels against exercising supplemental jurisdiction in such a situation: "[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 183 (2d Cir. 2004) (quoting *Castellano v. Bd. of Trs.*, 937 F.2d 752, 758 (2d Cir. 1991)).

Having dismissed all of Plaintiff's claims that were based on a federal question under 28 U.S.C. § 1331, and there being no other basis for federal jurisdiction over this case, the Court declines to exercise its supplemental jurisdiction over Plaintiff's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3). Accordingly, those claims are dismissed.

### E. Leave to Amend the Complaint is Denied Because it Would be Futile

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be "freely given when justice so requires." Because all of Plaintiff's federal claims are time-barred, leave to amend the complaint is denied as futile. *See Wallace v. NYC Dept. of Corr.*, 112 F. App'x 794, 795 (2d Cir. 2004) (affirming a district court's denial of leave to amend where the statute of limitations had run and amendment would be futile).

## VI. CONCLUSION

Plaintiff believed that by tweaking her 2012 lawsuit by adding new parties and copying facts from a class action complaint, she could find another route to recover her 2008 losses. This approach cannot succeed. While the Court recognizes that Ms. Levy feels wronged, plaintiffs cannot simply file new complaints every time they hear of a potential avenue of recovery—particularly after years have passed. Here, Ms. Levy's federal claims are untimely, and she is not entitled to equitable tolling of the elapsed statutes of limitation. Defendants' joint motion to dismiss Plaintiff's Second Amended Complaint is GRANTED.

The Clerk of Court is directed to terminate all pending motions and to close the case.

SO ORDERED.

Dated: June 9, 2017
New York, New York

_____
GREGORY H. WOODS
United States District Judge